■ In the Matter of BRIGITTE GRISANTI, Appellant, v MICHAEL GRISANTI, Respondent. [772 NYS2d 700]—

In a proceeding pursuant to Family Court Act article 6 to modify the visitation provisions of a stipulation of settlement, which were incorporated but not merged into a judgment of divorce dated February 27, 1996, the mother appeals, as limited by her brief, from so much of an order of the Family Court, Westchester County (Klein, J.), entered February 10, 2003, as, after a hearing, denied her petition and directed that visitation take place at such times and place as recommended by the subject child's treating mental health professionals.

Ordered that the order is reversed insofar as appealed from, on the law and as a matter of discretion, without costs or disbursements, and the matter is remitted to the Family Court, Westchester County, for complete forensic evaluations of the mother and the subject child, Michael Grisanti, Jr., by an independent court-appointed psychiatrist or psychologist, the appointment of a new Law Guardian, a new hearing in accordance herewith, to be conducted with all convenient speed, and a new determination.

The parties were married in 1987 and have two children, a daughter Lena and a son Michael who, in October 1994, at the age of six, was diagnosed with high-functioning autism and learning disabilities. In September 1994 the mother was incarcerated in the state of Michigan. In 1996, shortly after her release from prison and while she was residing in Tennessee, the parties were divorced. In a stipulation of settlement, which was incorporated but not merged into the parties' judgment of divorce, sole custody of the two children was awarded to the father, and the mother was not accorded any visitation or contact with the children. The stipulation further provided that if the mother desired to re-establish contact with the children, she was, among other things, to relocate from Tennessee to New York and commence therapy at certain designated agencies or one approved by the children's Law Guardian. Contact would be gradually initiated if and when there was a joint recommendation by the therapists for both mother and children and upon application to the court.

After the divorce, the mother attended college, receiving an associate's and a bachelor's degree, obtained steady employment, and received therapy for a number of years. She relocated from Tennessee to Kentucky where she currently maintains her residence. After having no contact with her children for over eight years, the mother filed two petitions in the Family Court, Westchester County, seeking modification of the visitation provisions of the divorce judgment. After a preliminary conference,

the mother withdrew her petitions without prejudice in order to communicate with her son's therapist to become acquainted with his condition and allow the therapist to make recommendations regarding visitation.

In May 2002 the mother, alleging a change in circumstances, commenced this proceeding to modify the provisions of the divorce judgment to permit visitation with her son only. The Family Court assigned a new Law Guardian, but the mother's request to have her own qualified expert evaluate the child was denied, except to the extent that the expert would be permitted to communicate with the child's treating professionals. During the pendency of the proceeding, the father was incarcerated. The child, who is now 15 years old, currently lives with his sister, step-sisters, and paternal grandmother.

Following a fact-finding hearing, at which the mother and the child's treating therapist testified, the Family Court found that visitation would be detrimental to the child. The Law Guardian did not present any witnesses or advocate on behalf of the child. The Family Court's determination was based solely upon the therapist's testimony that, due to the child's autism, he had difficulty dealing with change, he was already experiencing difficulties coping with his father's incarceration and his transition to a new school, and that the mother was "a stranger" to him and it would not be advisable to reintroduce her into his life at this time. The mother appeals from so much of the order as denied her petition for visitation at this time and directed that visitation take place at such time and place as recommended by the child's treating mental health professionals.

The general rule is that in the absence of a subsequent change in circumstance, the court should defer to the agreement of the parties (see Family Ct Act § 652 [a]; see also Matter of Manos v Manos, 282 AD2d 749 [2001]; Giurco v Giurco, 281 AD2d 458 [2001]; Matter of Induddi v Moore, 214 AD2d 616 [1995]). However, "[n]o agreement of the parties can bind the court to a disposition other than that which a weighing of all of the factors involved shows to be in the child's best interest" (Friederwitzer v Friederwitzer, 55 NY2d 89, 95 [1982]; People ex rel. Wasserberger v Wasserberger, 42 AD2d 93, 95 [1973], affd 34 NY2d 660 [1974]). Moreover, "[a] noncustodial parent should have reasonable rights of visitation, and the denial of those rights to a natural parent is a drastic remedy which should only be invoked when there is substantial evidence that visitation would be detrimental to the child" (Paul G. v Donna G., 175 AD2d 236, 237 [1991]; see Matter of Vanderhoff v Vanderhoff, 207 AD2d 494 [1994]; Matter of Hughes v Wiegman, 150 AD2d

449 [1989]). "While the determination of a hearing court in a custody or visitation proceeding is entitled to great respect (*Eschbach v Eschbach,* 56 NY2d 167 [1982]; *Ira K. v Frances K.,* 115 AD2d 699 [1985]), '[a]n appellate court would be seriously remiss if, simply in deference to the finding of a Trial Judge, it allowed a custody [and/or visitation] determination to stand where it lack[ed] a sound and substantial basis in the record' (*Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76 [1981])" (*Valenza v Valenza,* 143 AD2d 860, 862 [1988]).

Based upon our review of the hearing transcript, we conclude that there is insufficient evidence to support the Family Court's determination. The insufficiencies in the record stem primarily from the fact that neither the child nor the mother was ever fully evaluated by an independent court-appointed psychiatrist or psychologist before the fact-finding hearing. Notably, the Family Court relied exclusively on the testimony of a psychologist hired by the father as the child's therapist during the divorce proceedings, the psychologist's services were paid for by the father, and the psychologist testified on his behalf at the fact-finding hearing. As we have recently stated, "[i]t is important that, in a case that raises unusual questions, such as those presented here, there be evidence derived from an independent specialist with appropriate expertise . . . However, no truly independent psychological evidence was obtained during the course of the hearings" (*Matter of Wesley R.,* 307 AD2d 360, 362 [2003]; *see also Matter of Wissink v Wissink,* 301 AD2d 36 [2002]).

Moreover, although not determinative (*see Matter of Hughes v Wiegman, supra*), there should have been some inquiry concerning the child's preferences. The customary means available to garner information about a child, such as a court-ordered psychological evaluation, an in camera interview, or advocacy by the Law Guardian, were not utilized in this proceeding (*see Matter of Mix v Gray,* 265 AD2d 692 [1999]).

Because of these insufficiencies in the record, as well as the failure of the Law Guardian to take an active role in the proceedings (*see Koppenhoefer v Koppenhoefer,* 159 AD2d 113 [1990]; *Matter of Elizabeth R.,* 155 AD2d 666 [1989]), we conclude that the matter should be remitted for a new fact-finding hearing. In aid of such hearing, the Family Court should direct a forensic mental health examination of the mother and child to assure itself that the record is as complete as possible (*see* Family Ct Act § 251 [a]).

Since we are remitting the matter, we note that it was improper for the court to condition future visitation on the rec-

ommendation of a mental health professional (see *Johnson v Johnson,* 303 AD2d 641 [2003]; *Matter of Rueckert v Reilly,* 282 AD2d 608 [2001]; *Matter of Millett v Millett,* 270 AD2d 520, 522 [2000]; *Matter of Sullivan County Dept. of Social Servs. v Richard C.,* 260 AD2d 680 [1999]; *Matter of Gadomski v Gadomski,* 256 AD2d 675 [1998]). Ritter, J.P., S. Miller, Luciano and Townes, JJ., concur.